# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| METAFI PRO LIMITED, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION |
| | § | CASE NO. 1:24-cv-1180 (DNH/CFH) |
| | § | |
| | § | |
| v. | § | PLAINTIFF'S APPLICATION FOR |
| | § | TEMPORARY RESTRAINING ORDER |
| NY TRADING, INC.; STARCO | § | AND ORDER TO SHOW CAUSE WHY |
| LOGISTICS, INC.; WENZONG DUAN | § | A PRELIMINARY INJUNCTION |
| d/b/a WLT TRADING, LLC; and COLONY | § | SHOULD NOT ISSUE |
| POND MANAGEMENT, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

NOW COMES, Plaintiff METAFI PRO LIMITED ("Metafi"), and files this Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, as against Defendants NY TRADING, INC. ("NYT"); STARCO LOGISTICS, INC. ("Starco"); WENZONG DUAN d/b/a WLT TRADING, LLC ("WLT"); and COLONY POND MANAGEMENT, LLC ("Colony Pond")(collectively, "Defendants"), and for the reasons set forth in the accompanying Memorandum of Law, respectfully requests the Court to grant the same.

Signed on October 3, 2024.

Respectfully submitted,

_____.
Henna Ghafoor
Federal Bar No.: 2258471
TBN: 24079867
hghafoor@mp-lg.com
Ethan Zhang

1

FEDERAL BAR NO.: 3856063
TBN: 24124466
ezhang@mp-lg.com
MOSAIC Paradigm Law Group PC
10370 Richmond Avenue, Suite 850
Houston, Texas 77042
Telephone: (281) 805-7169
Facsimile: (281) 805-7172

Benjamin W. Hill
NYBN: 514953
ben@capezzahill.com
CAPEZZA HILL, LLP
30 South Pearl Street, Suite P-110
Albany, New York 12207
o. 518 478 6065
m. 518 879 0023
f. 518 407 5661

**ATTORNEYS FOR PLAINTIFF,
METAFI PRO LIMITED**

2

## TABLE OF CONTENTS

MEMORANDUM OF LAW……………………………………………………………4

    I.     FACTUAL BACKGROUND……………………………………………..….4

    II.    APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION………………….10

    III.   PRAYER………………………………………………...………………12

## MEMORANDUM OF LAW

TO THE HONORABLE JUDGE OF SAID COURT:

In support of its application for temporary restraining order and order to show cause why a preliminary injunction should not issue against each and all Defendants, Plaintiff would for cause of action respectfully show unto the Court the following:

### I. FACTUAL BACKGROUND

The following facts are supported by the declaration of Yi Sun (*see* Ex. 1):

a. On June 30, 2023, Metafi and NYT entered into a Sales and Purchase Agreement ("Purchase Agreement") for the purchase of 4,500 WhatsMiner Server-M50 with the hashrate of 120T and delivery of total hash rate of no less than 540,000 TH ("Miners").

b. Under the Purchase Agreement, Metafi was to pay NYT a total of $8,370,000.00 ("Purchase Price") for the Miners. NYT was required to deliver the Miners to Metafi's designated hosting sites within 10 working days, failing which Metafi was entitled to terminate the agreement, and NYT was obligated to return the amounts paid by Metafi for undelivered Miners.

c. On July 7, 2023, Metafi and NYT entered into a Logistics Service Agreement ("Shipping Agreement"), whereby NYT was to ship the Miners it had sold to Metafi from Hong Kong, China, and Thailand to the United States and other regions. The agreement became effective as of June 29, 2023, per terms set forth in recitals.

d. Under the Purchase Agreement and the Shipping Agreement, NYT was expressly obligated to transport, deliver, and safeguard the Miners in the following, non-exclusive, respects:

4

    i.    NYT shall ensure that all goods are delivered on time and in good condition to the carrier designated by Metafi;

    ii.    NYT shall bear the risk of loss of the goods due to any circumstances before delivery to the carrier;

    iii.    NYT shall be responsible for all the loss of Miners caused by the transportation of the Miners or any third party, or theft of the Miners during transportation from NYT to Metafi. Once the situation as such happened, NYT would contact the insurance company for compensation and NYT shall pay the compensation to Metafi after any damage or loss;

    iv.    NYT shall ensure that the Miners would be insured for no less than 110% of the value of all Miners;

    v.    If Miners are damaged or lost during transportation, NYT shall be liable for compensation and shall assist Metafi in seeking compensation from the insurance company;

    vi.    If Miners delivered by NYT are inconsistent with the quantity of the goods previously received, Metafi may require compensation from NYT for the loss;

    vii.    The Purchase Agreement shall be governed by the laws of New York, USA;

    viii.    The Chinese version of the Shipping Agreement shall prevail in case of any discrepancy exists in translation.

e.    After the subject dispute arose, NYT advised Metafi that it contracted with WLT for international logistics and customs clearance services relating to the Miners.

f. Based on the Nevada Secretary of State business entities portal, WLT is dissolved, with Articles of Dissolution having been filed on March 28, 2023, before NYT would have contracted with WLT in connection with Metafi's Miners. Duan is identified as the sole Managing Member of WLT and was conducting business in his individual capacity under the guise of a dissolved entity.

g. Neither WLT's involvement nor the fact of its dissolution were disclosed by NYT to Metafi at the time the Purchase Agreement and the Shipping Agreement were entered between NYT and Metafi.

h. After the subject dispute arose, NYT advised Metafi that WLT, in turn, contracted with Starco to transport and/or store the Miners within the U.S. pending instructions from NYT on further shipments to Metafi's designated hosting sites.

i. For utilization of the hashrate[1] of the Miners, on November 9, 2023, Metafi entered into a Hosting Services Agreement with Colony Pond ("Hosting Agreement"). Under the Hosting Agreement, Colony Pond was required to provide co-location and hosting services for 1900 Miners by providing 6.5 MW of electricity and relevant maintenance services at Colony Pond's facility.

j. Although Colony Pond could move and re-install the Miners to a different but equally comparable location on its site to facilitate continuous Miner operation, it could not do so without Metafi's written permission.

---

[1] "Hashrate" refers to the total combined computational power that is being used to mine and process transactions on a Proof-of-Work blockchain, such as BitCoin.

k.  Metafi paid to Colony Pond a security deposit in the amount of $652,000.00 under the Hosting Agreement.

l.  Under the Hosting Agreement, Colony Pond was expressly obligated to safekeep the Miners by providing commercially reasonable "all-risk" property liability insurance for its premises and its activities at the premises and not moving the Miners from their agreed upon location without the written approval of Metafi.

m.  The Service Agreement shall be construed under the laws of the State of New York.

n.  Metafi fulfilled its obligation under the Purchase Agreement by paying to NYT a total of $8,370,000.00 for the Miners. Yet, according to associated bills of lading, NYT delivered to the U.S. only 4,365 of 4,500 Miners in breach of the Purchase Agreement. The resulting shortfall of 27,352 TH at $15.50 per TH amounts to USD $423,956.00 in losses to Metafi in the first instance.

o.  NYT next breached its agreement with Metafi by failing to deliver 1,900 of the 4,365 Miners to Colony Pond. According to NYT, it actually shipped 1,902 Miners to Colony Pond.

p.  On information and belief, NYT, in conjunction with WLT and Starco, arranged for said shipment either negligently or with reckless disregard for the protection of the Miners from loss or theft. As a result, only 616 Miners reportedly reached Colony Pond. Taking NYT's shipment figure of 1,902 as true, for the 1286 Miners lost or stolen on NYT/WLT/Starco's watch, Metafi has been damaged in the amount of USD $2,512,983.00 ($2,391,960 Equipment value, plus cost of shipping and customs).

q. In addition, Metafi has lost mining revenue associated with the missing Miners. Metafi conservatively estimates that from December 1, 2023, to August 31, 2024, the potential profit for operating 1286 Miners would be 55.19 bitcoins. After factoring in costs, the associated profit loss is estimated at over USD $2,759,500.00 and continues to accrue.

r. Metafi fulfilled its obligation under the Hosting Agreement by paying to Colony Pond a security deposit in the amount of USD $625,000.00.

s. In late 2023, according to NYT, 1902 Miners were loaded from a warehouse in Pico Rivera, California, onto two trucks for delivery to Colony Pond's hosting site in New York. One such truck was loaded with 934 Miners ("Truck 1"), and the other with the remaining Miners ("Truck 2").

t. Colony Pond acknowledged arrival of only Truck 1 at its hosting site, but claimed only 616 of the 934 Miners allegedly loaded onto Truck 1 were delivered.

u. Metafi requested an inspection of the Miners in Colony Pond's possession, or other form of verification of Colony Pond's claims, but Colony Pond failed to cooperate.

v. On information and belief, Colony Pond retains possession of all 934 Miners valued at USD $1,737,240.00, and is using the same for its own benefit and to Metafi's detriment.

w. Ultimately, Colony Pond reported it was unable to host any of the Miners in its possession due to a failure of its physical facilities; namely, a power outage. In doing to, Colony Pond breached and/or repudiated the agreement between these parties.

x. Per the Hosting Agreement, Colony Pond was required to provide "all-risk" insurance for the activities at its premises, including damages resulting from power loss.

8

y.  From December 1, 2023, to August 31, 2024, 934 Miners would have conservatively produced 39.17 bitcoins, resulting in an estimated USD $1,958,500.00 in lost profits for Metafi.

z.  On December 19, 2023, Metafi advised Colony Pond that it wished to terminate the agreement due to Colony Pond's failure to cure its breach, and the daily revenue lost by Metafi as a result. In an effort to mitigate its damages, Metafi also requested that its Miners be packed up and made ready for pick-up. After some delay, Colony Pond advised that the Miners had been moved (without prior notice to Metafi as required under the Hosting Agreement) and were not available for pick-up.

aa. To date, Colony Pond remains in possession of between 616 to 934 Miners; has failed to provide hosting services for same; has failed to refund to Metafi its security deposit despite termination of the Hosting Agreement; and has otherwise failed to make Metafi whole.

bb. On April 25, 2024, Metafi caused to be made a formal demand upon all Defendants. Absent any good faith resolution of this dispute, Metafi had no choice but to retain an attorney to prosecute its rights under the agreements at issue and the law.

cc. Metafi submits that because the Defendants have been secreting property that rightfully belongs to Metafi, extraordinary remedies to preserve Metafi's property by enjoining, preserving and protecting against the assignment, transfer, sale, purchase, and/or any other form of disposition of any rights, title, or interest in said assets is necessary. Absent the same, there will be imminent irreparable harm to Metafi who does not have an adequate remedy at law to protect its interests until a judgment in this matter can be rendered.

## II. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION

The general requirements for obtaining both temporary restraining orders and preliminary injunctions under Rule 65 are the same. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (delineating the factors relevant to considering a motion for preliminary injunction). "[A] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the *status quo* while the merits of the cause are explored through litigation." *Foreman v. Dallas County, Tex.*, 193 F.3d 314, 323 (5th Cir. 1999). A temporary restraining order "should be limited to preserving the *status quo* only as long as necessary to hold a preliminary injunction hearing." *Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd.*, 2011 WL 6938450, at *2 (W.D. Tex. Dec. 30, 2011); WRIGHT ET AL., *supra*, § 2948.3 ("**The [temporary restraining] order is designed to preserve the *status quo*** until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party."). "A party seeking a preliminary injunction must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *United States v. Butler*, 543 Fed. Appx. 95, 96, citing *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06; *Jones v. Cawley,* 2010 U.S. Dist. LEXIS 61845, see also *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master*, 598 F.3d 30, 35 (2d Cir. 2010).

Here, a TRO is necessary and justified to maintain the *status quo*. The conduct alleged herein will cause Metafi immediate and irreparable harm. Defendant(s) have taken possession or control of Metafi's Miners over which they have no lien or ownership rights and are interfering with Metafi's efforts to relocate at least the 616 Miners known to be in Colony Pond's possession.

Defendant(s)' lack of adequate records on the location of the 1902 Miners, and Colony Pond's refusal to permit the inspection of the 616 Miners it admits to possessing, warrant a serious, cogent, and legitimate concern that Defendant(s) will immediately sell or otherwise dispose of Metafi's Miners to evade a judgment by this Court for their own benefit and to the detriment of Metafi. By their own admission(s), Defendant(s) are nearly insolvent or are disposing of their companies and/or assets and will not be able to make Metafi whole by the time it is found that they have wrongfully sold Metafi's Miners.

The substantial harm to Metafi by Defendant(s) continuing to keep and likely sell Metafi's Miners far outweighs any harm to Defendant(s) caused by Defendant(s) being ordered (a) not to sell or otherwise encumber Metafi's property and (b) to stop interfering with Metafi's efforts to take possession of the Miners that have not yet been sold. No third parties will be harmed by the issuance of a temporary restraining order or injunction, particularly because all such parties known (seller, shipper, warehouser, etc.) are involved in this lawsuit. It is in the public interest to protect lawful ownership rights, as well as good faith and fair dealing in business transactions.

A court-ordered injunction is necessary given that a judgment by this court will be a hollow formality if the 1902 Miners at issue are sold by any of the Defendant(s). A court-ordered injunction is also necessary to preserve the *status quo*. Wherefore, Metafi is entitled to an immediate order of the Court under FRCP 64, 65 and 66:

  a. enjoining, preserving and protecting against the assignment, transfer, sale, purchase, and/or any other form of disposition of any rights, title, or interest in the Miners possessed by any of the Defendant(s) while the merits of the contractual dispute are resolved by this court or otherwise;

  b. enjoining Colony Pond and its agents from preventing Metafi from taking possession

of the 616 Miners that Colony Pond admitted were in its possession; and

c. Award such other and further relief as the Court deems appropriate.

It is well-established that "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). For example, a "district court may maintain the *status quo* and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Id.* (Emphasis added). Indeed, a preliminary injunction, designed to maintain the *status quo* and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be hiding funds or be insolvent at the time of judgment. *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir. 1986) (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)).

Rule 65(c) states that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Courts have the discretion to issue injunctions without security. Metafi submits that it is a victim of Defendants' misconduct and seeks to prevent Defendants from doing further harm to Metafi. In this circumstance, Metafi submits the Court should use its considerable discretion in ordering that no security be posted. Should the Court decide to require security, Metafi submits that a bond in the amount of $500.00 is sufficient to protect Defendants' interests.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, METAFI PRO LIMITED., respectfully prays that, upon hearing of this matter, the Court enter a temporary restraining order and temporary/permanent injunction as prayed for, herein, against each of the Defendants named

in this cause, and for all other relief, legal or equitable, direct or consequential, to which Plaintiff may show itself to be justly entitled.

Signed on October 3, 2024.

Respectfully submitted,

_____.
HENNA GHAFOOR (LEAD)
FEDERAL BAR NO.: 2258471
TBN: 24079867
hghafoor@mp-lg.com
ETHAN ZHANG
FEDERAL BAR NO.: 3856063
TBN: 24124466
ezhang@mp-lg.com
MOSAIC Paradigm Law Group PC
10370 Richmond Avenue, Suite 850
Houston, Texas 77042
Telephone: (281) 805-7169
Facsimile: (281) 805-7172

Benjamin W. Hill (LOCAL)
FEDERAL BAR NO.: 514953
ben@capezzahill.com
CAPEZZA HILL, LLP
30 South Pearl Street, Suite P-110
Albany, New York 12207
o. 518 478 6065
m. 518 879 0023
f. 518 407 5661

**ATTORNEYS FOR PLAINTIFF,
METAFI PRO LIMITED**