UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

METAFI PRO LIMITED,

         Plaintiff,

v.

NY TRADING, INC, STARCO LOGISTICS, INC., WENZONG DUAN, doing business as WLT TRADING, LLC, and COLONY POND MANAGEMENT, LLC,

         Defendant.

1:24-cv-1180
(ECC/PJE)

---

APPEARANCES:

Henna Ghafoor, Esq., *for Plaintiff*
Jennifer Karnes, Esq., *for Defendant NY Trading, Inc.*

**Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION & ORDER

Plaintiff Metafi Pro Limited filed this diversity action alleging breach of contract for lost "bitcoin miners"[1] against NY Trading, Inc. (NY Trading), Starco Logistics, Inc. (Starco), Wenzong Duan d/b/a WLT Trading, LLC (Duan), and Colony Pond Management, LLC (Colony Pond). Dkt. No. 1.  Starco is the only Defendant that filed an Answer, and the Answer alleges crossclaims against the other Defendants. Dkt. No. 23.  On December 16, 2024, Plaintiff requested an entry of default against all Defendants except Starco, and on December 18, 2024, the Clerk of the Court entered the requested default. Dkt. Nos. 28, 29.  On February 21, 2025, Plaintiff moved

---

[1] A bitcoin miner is a specialized computer built to perform the complex calculations that generate bitcoin, a form of cryptocurrency. *See* Garnett, Allie Grace. "What is crypto mining and how does it work?" *Encyclopedia Britannica*, 13 Aug. 2025, https://www.britannica.com/money/what-is-crypto-mining (last visited Sept. 30, 2025).

for an entry of default judgment against all Defendants except Starco. Dkt. No. 36. Approximately one month later, the Court granted Defendant NY Trading's request for additional time to respond, and on April 4, 2025, NY Trading filed a motion to vacate the entry of default and for leave to file a motion to dismiss. Dkt. Nos. 37, 38, 40. The motions are fully briefed. Dkt. Nos. 40, 42, 43. For the following reasons, Plaintiff's motion for default judgment is denied, and NY Trading's motion to vacate the clerk's entry of default and requesting leave to file a motion to dismiss is granted.

## I. Background[2]

Pursuant to a June 30, 2023 Sales and Purchase Agreement, Plaintiff agreed to buy 4,500 WhatsMiner Server-M50 bitcoin miners (the Miners) from NY Trading for $8,370,000. Complaint (Compl.) ¶¶ 11, 12, Dkt. No. 1. According to the agreement, NY Trading would deliver the Miners to hosting sites designated by Plaintiff. *Id*. Pursuant to a July 7, 2023 Logistics Service Agreement, NY Trading would ship the Miners from Hong Kong, China, and Thailand to the United States and other regions. *Id*. at ¶ 13. Pursuant to both agreements, NY Trading was required to insure the Miners at no less than 110% of their value, and NY Trading would be liable for any damage to or loss of the Miners during transportation. *Id*. at ¶ 14.

NY Trading "contracted with" WLT Trading for "international logistics and customs clearance services relating to the miners." Compl. ¶ 15. At the time, WLT Trading had been dissolved, and Duan, who was the sole managing member of WLT Trading, "was conducting business in his individual capacity under the guise of a dissolved entity." *Id*. at ¶ 16. WLT

---

[2] The facts are drawn from the Amended Complaint. The well pleaded allegations it contains are deemed admitted and assumed to be true for purposes of this motion. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Trading, "in turn, contracted with Starco to transport and/or store the Miners within the United States pending instructions from" NY Trading "on further shipments to Metafi's designated hosting sites." *Id*. at ¶ 18.

Pursuant to a Hosting Services Agreement, Colony Pond agreed to provide "co-location and hosting services" for 1,900 Miners at a Colony Pond facility. Compl. ¶ 19. Pursuant to this agreement, Plaintiff paid Colony Pond $652,000 as a security deposit; Colony Pond could not move and re-install the Miners without Plaintiff's permission; and Colony Pond had to maintain property liability insurance for the premises where the Miners were operated and stored. *Id*. at ¶¶ 17, 20-22.

NY Trading delivered only 4,365 of the 4,500 Miners to the United States, Compl. ¶ 24, and only 616 Miners "reportedly reached" Colony Pond, *id*. at ¶ 26. According to NY Trading, it loaded 1,902 Miners onto two trucks for delivery to Colony Pond's hosting site in New York: Truck One had 934 Miners and Truck Two had the remaining Miners. *Id*. at ¶ 29. Colony Pond acknowledged the arrival of only Truck One and claimed that truck arrived with only 616 of the 934 Miners allegedly loaded on it. *Id*. at ¶ 30. "Ultimately, Colony Pond reported" that it could not host any of the Miners because of a power outage. *Id*. ¶ 33. When Plaintiff "advised Colony Pond that it wished to terminate the agreement," and asked Colony Pond to pack up the Miners for "pick-up," "[a]fter some delay, Colony Pond advised that the Miners had been moved (without prior notice to Metafi as required under the Hosting Agreement) and were not available for pick-up." *Id*. at ¶ 36.

II.     **Standard of Review**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminer, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the

3

plaintiff must "obtain an entry of default under Rule 55(a). *Id.* at 504. *See also* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Northern District of New York Local Rule (Local Rule) 55.1 (requiring a party "applying to the Clerk" for an entry of default to "submit an affidavit showing" that (1) "the party against whom it seeks a judgment" is "not an infant, in the military, or an incompetent person," (2) "has failed to plead or otherwise defend the action," and (3) "has properly served the pleading to which the opposing party has not responded").

Second, the plaintiff must "apply to the court for entry of a default judgment" under Rule 55(b)(2). *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). The decision to set aside an entry of default is "left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Co. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Still, "because defaults are generally disfavored and reserved for rare occasions, when doubt exists as to whether a default should be . . . vacated, the doubt should be resolved in favor of the defaulting party." *Id.* at 96. In deciding whether to vacate a default, a court should consider: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.*

4

"Willfulness 'is the most significant factor' but is not dispositive." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (quoting *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024)). In the default judgment context, willfulness "'looks to egregious or deliberate conduct,'" *United States v. Starling,* 76 F.4th 92, 102 (2d Cir. 2023) (internal quotation marks omitted), "that 'was not satisfactorily explained.'" *Henry,* 108 F.4th at 52 (quoting *Sec. Exch. Commn. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998))).

Default judgments "are generally disfavored and are reserved for rare occasions." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Before a court enters a default judgment, it must "ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for a default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (cleaned up). The Second Circuit has cautioned that default judgment should only be used as a last resort, and that there is a strong preference for evaluating cases on the merits. *See Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits.").

### III. Discussion

#### A. Motion to Vacate Entry of Default

NY Trading moves for the default to be vacated arguing that (1) its default was not willful because as soon as it had actual notice of this action, it immediately took action, Defendant's Memorandum of Law (Def. Mem.) at 11[3], Dkt. No. 40-6, (2) a mandatory arbitration clause provides a meritorious defense, *id.* at 12, and (3) vacating the default would not result in any

---

[3] Page numbers refer to the pagination generated by the ECF system, unless otherwise noted.

5

prejudice to Plaintiff because Plaintiff is already litigating against Starco, and litigating against NY Trading as well would not require significant additional resources, *id.* at 12-13.

Plaintiff responds that default should not be vacated because the default was willful given that NY Trading did not enter an appearance even though its agent was properly served before the default was entered and, even assuming that NY Trading did not have actual notice until late January 2025, it did not enter a notice of appearance promptly. Plaintiff's Opposition (Pl. Opp.) at 13-16, Dkt. No. 42. In addition, Plaintiff argues that there is no meritorious defense because the arbitration clause does not apply, *id.* at 17-20, and vacating the default would cause prejudice by causing delay and additional costs, *id.* at 16-17.

Regarding the willfulness factor, NY Trading does not dispute that it was properly served through its agent, but claims that it did not receive actual notice until January 20, 2025 when it began searching for representation and contacted Plaintiff to obtain copies of the "papers" and schedule a conference call. Dkt. No. 40-1 ¶¶ 4, 5-7. Specifically, according to a declaration from NY Trading's attorney, NY Trading did not have actual notice about the lawsuit until approximately January 20, 2025 when Duan told her about this action. Declaration of Li Xiaojuan, Dkt. No. 40-1 at ¶ 4. On January 23, 2025, she "immediately consulted" with a China-based law firm that has a licensed attorney in the United States, "but ultimately determined not to engage the firm's services." *Id.* at ¶ 5. On approximately February 18, 2025, she participated in a conference call with plaintiff's counsel, *id.* at ¶ 6, and on February 27, 2025, plaintiff's counsel sent her documents regarding the case in response to her February 23, 2025 email, *id.* at ¶¶ 7, 8.

NY Trading offers no explanation why it did not receive notice from its registered agent. In addition, even assuming that NY Trading did not have actual notice until January 20, 2025, it did not talk to plaintiff's counsel until almost one month after that, and it did not file anything on

6

the docket until two months after the claimed actual notice. This delay is negligent and likely grossly negligent, but is not sufficiently egregious to be willful. *Am. Alliance Ins. Co*., 92 F.3d at 61 (not willful where defendant, after filing error by in-house counsel staff, missed the deadline to respond to complaint by two months); *Gadre v. Hexanika, Inc.*, No. 21-cv-11221, 2023 WL 2569882, at *2 (S.D.N.Y. Mar. 20, 2023) (same where defendant, which did not maintain an accurate public record of registered agent and took one month to appear even after actual notice); *LG Cap. Funding, LLC v. On4 Commc'ns, Inc.*, No. 16-cv-6943, 2018 WL 5020170, at *3-4 (E.D.N.Y. Jan. 17, 2018), *report and recommendation adopted as modified*, 2018 WL 4583486 (E.D.N.Y. Sept. 25, 2018), *aff'd,* 796 F. App'x 57 (2d Cir. 2020) (same where defendant, which did not maintain an accurate address with its registered agent, did not appear until after a motion for default judgment had been filed). NY Trading's negligence weighs somewhat against vacating default. *See Am. Alliance Ins. Co*., 92 F.3d at 61 ("the degree of negligence in precipitating a default is a relevant factor to be considered"); *see also id.* ("Gross negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief."); *LG Cap. Funding, LLC*, 2018 WL 5020170, at *4 ("While Defendant's failure to update their records and maintain a reliable mailing address is grossly negligent, it is not clear that their conduct is sufficiently egregious as to be willful," but it "weighs against vacating the default.").

As to whether a meritorious defense exists, NY Trading has provided a Purchase Agreement and a Logistics Service Agreement, both of which contain arbitration clauses.[4]  *See* Dkt. Nos. 40-4 ¶ 11; 40-5 ¶ 5.4. Whether the arbitration clauses are mandatory and apply here are not questions that should be resolved at this stage of the litigation because "[t]he test of . . . a

---

[4] The Court does not reach the question of whether both arbitration clauses are mandatory as NY Trading argues at this stage of the litigation.

[meritorious] defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 173 (2d Cir. 2001) (quoting *Enron Oil Corp.,* 10 F.3d at 98). Solely for purposes of this motion and without deciding whether any arbitration clauses do in fact apply, this is a sufficient showing of a meritorious defense. This factor weighs in favor of vacating the default.

Finally, "delay alone is not a sufficient basis for establishing prejudice. . . . [r]ather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Henry v. Oluwole*, 108 F.4th 45, 52-53 (2d Cir. 2024) (quoting *Davis v. Musler,* 713 F.2d at 916 (internal quotation marks and citations omitted)). Given that Plaintiff is already litigating against Starco, any prejudice Plaintiff suffered because of NY Trading's delay in responding seems to be minimal. This factor therefore weighs in favor of vacating the default.

Considering all of the factors—with only negligence weighing somewhat against vacating the default—and the strong preference for evaluating cases on the merits, the default is therefore vacated.

Nevertheless, the Court warns NY Trading that it could face serious sanctions, including default judgment, if it fails to comply with deadlines going forward. *See Guggenheim Capital LLC v. Birnbaum,* 722 F.3d 444, 450-51 (2d Cir. 2013) (explaining that entering a judgment against a defendant is a "severe" sanction, but "may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party") (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

### B. Motion for Default Judgment

Given that NY Trading's motion to vacate default is granted, Plaintiff's motion for default judgment as to NY Trading is denied. Plaintiff's motion for default judgment as to Duan and Colony Pond (the Defaulting Defendants) is also denied because (a) Plaintiff has not pled sufficient facts to establish their liability as a matter of law, and (b) default judgment against both Defaulting Defendants creates a substantial risk of inconsistent judgments.[5]

The Defaulting Defendants are "deemed to have admitted the factual allegations in the Complaint with respect to liability (as distinct from damages)." *Aeronet Worldwide, Inc. v. AB&M Interstate Services, Inc.*, 6:22-cv-1081 (BKS), 2023 WL 6599077, at *2 (N.D.N.Y. Oct. 10, 2023) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). But "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted). In addition, "a district court 'need not agree that the alleged facts constitute a valid cause of action,' and may decline to enter a default judgment on that ground." *Aeronet Wordlwide, Inc.,* 2023 WL 6599077, at *2 (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

#### 1. Duan

After reviewing the Complaint, the Court declines to enter default judgment against Duan. As an initial matter, Plaintiff pleads claims against Duan under both the Carmack Amendment and state law, but the Carmack Amendment "preempts all state law on the issue of interstate carrier liability." *Aeronet Worldwide*, 2023 WL 6599077, at * 2 (quoting *Aviva Trucking Special Lines*

---

[5] Given these conclusions, the Court does not address whether the jurisdictional and procedural requirements are satisfied.

9

*v. Ashe,* 400 F. Supp. 3d 76, 79 (S.D.N.Y. 2019). As a result, it appears that only the Carmack Amendment claim can remain.

In addition, the facts alleged in the Complaint are not sufficient to establish Duan's liability because Duan's role in the lost Miners is not clear from the conclusory allegations against NYT, Duan, and Starco collectively and the allegations that NYT, Duan, and Starco caused harm through a concerted effort. *See, e.g.,* Compl. ¶ 26 (alleging that 1,286 Miners were "lost or stolen on NYT/WLT/Starco's watch."); *see also id.* ¶¶ 15-18, 24-27, 54-65, 76-83; *Aeronet Worldwide*, 2023 WL 6599077 at *3 (declining to enter default judgment when a plaintiff "has not alleged any particularized facts regarding" the defaulting defendant and instead "rel[ied] on a series of conclusory allegations.").

In addition, Duan is similarly situated to NYT and Starco, and a default judgment against Duan risks directly inconsistent judgments. "[D]irectly inconsistent judgments" are prohibited by *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). *Moore v. Booth*, 122 F.4th 61, 67 (2d Cir. 2024) (quoting *Henry v. Oluwole*, 108 F.4th 45, 54 (2d Cir. 2024) (additional quotation omitted)). As a result, "if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants." *Moore*, 122 F.4th at 67 (quoting *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001).

> [T]he *Frow* principle applies when the defendants are "similarly situated" or have "closely related defenses" even if not jointly liable. The idea is that when "facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved."

*Moore,* 122 F.4th at 67-68.

Here, although each Defendant will have its own defenses, Defendants are similarly situated, and they have closely related defenses because liability for all Defendants will depend on

who had custody of the Miners when they were lost.  If the Miners were lost while in the custody of one Defendant, liability against any other Defendant would be inconsistent.  *See Aeronet Worldwide, Inc.,* 2023 WL 6599077, at *5 (declining to enter default judgment where Defendants shared defenses, and defaulting defendants "could later escape liability by proving that Plaintiff did *not* deliver the Cargo to Defendants, or that the Cargo *did* arrive in Laredo, Texas"); *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 162-63 (N.D.N.Y. 2020) (declining to grant default judgment based on their default admissions that a heater was defective where litigation against the non-defaulting defendants could establish that the heater was not defective or that plaintiff's injuries were not caused by the heater).

In addition, deferring on the motion for default judgment against Duan will not cause Plaintiff meaningful prejudice because it would resolve liability, not damages, and damages could not be decided until after liability were decided for the other defendants.  *See Hunter*, 505 F. Supp. 3d at 162-63 ("Without a damages calculation to accompany the liability determination, no final judgment could be entered in [Plaintiffs'] favor, and there could be no enforceable judgment that [they] could attempt to collect.") (quoting *Lemache v. Tunnel Taxi Mgt., LLC*, 354 F. Supp. 3d 149, 155 (E.D.N.Y. 2019)).  Furthermore, granting the default judgment now would "not assist [Plaintiff] in litigating the case against" the non-defaulting Defendants because a default judgment against Duan would have no collateral estoppel effect against the non-defaulting Defendants." *Id.* (quoting *Lemache,* 354 F. Supp. 3d at 155).  For all of these reasons, the Court declines to enter a default judgment against Duan at this time.

### 2. Colony Pond

After reviewing the Complaint, the Court declines to enter default judgment against it.  The facts alleged in the Complaint are not sufficient to establish Colony Pond's liability as a matter of

11

law. For example, Plaintiff alleges that some Miners arrived at Colony Pond's facilities, but its allegations regarding the number of miners that arrived at Colony Pond are inconsistent. *Compare* Compl. at ¶ 45 (alleging that Plaintiff "fail[ed] to deliver at least 1,286 of 1,900 Miners to Colony Pond" meaning that 614 Miners arrived at Colony Pond) *with id*. at ¶ 50 (alleging that "[t]he actual number of Miners received by Colony Pond were 934") *and id*. at 60-65 (alleging that Colony Pond "assumed control of between 616 to 934 Miners"). These contradictions weigh against a conclusion that Plaintiff pled sufficient facts to establish liability against Colony Pond as a matter of law.

In addition, the underlying facts for Plaintiff's claims against Colony Pond—when and how the Miners were lost—are closely related to the underlying facts for Plaintiff's claims against the other Defendants. For the reasons explained above, entering a default judgment would create the real risk of inconsistent judgments, and deferring on the default judgment motion will not result in meaningful prejudice to Plaintiff.[6] Default judgment will therefore not be entered against Colony Pond at this time.

### C. NY Trading's Request for Leave to File Motion to Dismiss

Defendant NY Trading further requests leave of the Court to move to dismiss the claims against NY Trading. Def. Mem. at 5. NY Trading argues that the claims should be dismissed because the claims are precluded by a binding arbitration agreement between NY Trading and Plaintiff. *Id*. at 5-7. Plaintiff disputes the substance of NY Trading's arguments for dismissal but does not raise any procedural arguments opposing leave to move to dismiss. Pl. Opp. at 20-24.

---

[6] Delaying the entry of a default judgment will also not prejudice Plaintiff by delaying recovery of the Miners because Colony Pond is preliminarily enjoined from interfering with Plaintiff taking possession of the Miners currently in Colony Pond's possession. Dkt. No. 25.

NY Trading has leave of the Court to file a motion to dismiss as authorized by the Federal Rules of Civil Procedure. Arguments related to any such motion that the parties made in connection with the motions related to default and default judgment are premature, and the Court has not considered them.

## IV. Conclusion

For these reasons, it is

**ORDERED**, that Plaintiff Metafi Pro Limited's motion for entry of default judgment, Dkt. No. 36, is **DENIED**, and it is further

**ORDERED**, that Defendant NY Trading, Inc.'s motion to vacate the clerk's entry of default as to Defendant NY Trading, Inc., Dkt. No. 40, is **GRANTED**, and the Clerk of Court is respectfully directed to vacate its entry of default as to Defendant NY Trading, Inc., Dkt. No. 29, and it is further

**ORDERED**, that Defendant NY Trading, Inc.'s motion for leave to file a motion to dismiss, Dkt. No. 40, is **GRANTED.**

**IT IS SO ORDERED.**

Dated: September 30, 2025

Elizabeth C. Coombe
U.S. District Judge