**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

METAFI PRO LIMITED,

<table>
<tr><td></td><td>Plaintiff,</td><td>1:24-cv-1180<br>(ECC/PJE)</td></tr>
<tr><td>v.</td><td></td><td></td></tr>
</table>

NY TRADING, INC., STARCO LOGISTICS,
INC., WENZONG DUAN, doing business as
WLT TRADING, LLC, and COLONY POND
MANAGEMENT, LLC,

                    Defendants.

---

Henna Ghafoor, Esq., *for Plaintiff*
Jennifer L. Karnes, Esq., *for Defendant NY Trading, Inc.*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Metafi Pro Limited filed this action alleging causes of action relating to lost bitcoin miners against Defendants NY Trading, Inc. (NY Trading), Starco Logistics, Inc. (Starco), Wenzong Duan d/b/a WLT Trading, LLC (Duan), and Colony Pond Management, LLC (Colony Pond). Dkt. No. 1 (Verified Complaint). Presently before the Court is NY Trading's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Rule 12(b)(6), and/or Section 4 of the Federal Arbitration Act (FAA). Dkt. No. 47. The motion is fully briefed. Dkt. Nos. 48, 49, 52. For the following reasons, the motion to dismiss is denied.

## I.    BACKGROUND

### A.    Plaintiff's Verified Complaint[1]

Pursuant to a June 30, 2023 Sales and Purchase Agreement (the Purchase Agreement), Plaintiff agreed to buy 4,500 WhatsMiner Server-M50 bitcoin miners (the Miners) from NY Trading for $8,370,000. Dkt. No. 1 ¶¶ 11, 12. According to the Purchase Agreement, NY Trading was required to deliver the Miners to hosting sites designated by Plaintiff. *Id*. Pursuant to a July 7, 2023 Logistics Service Agreement (the Shipping Agreement, and together with the Purchase Agreement, the Agreements), NY Trading was to ship the Miners from Hong Kong, China, and Thailand to the United States and other regions. *Id*. at ¶ 13. NY Trading was required under the Agreements to insure the Miners at no less than 110% of their value, and NY Trading would be liable for any damage to or loss of the Miners during transportation. *Id*. at ¶ 14.

NY Trading "contracted with" WLT Trading for "international logistics and customs clearance services relating to the miners." *Id.* at ¶ 15. At the time, WLT Trading had been dissolved, and Duan, who was the sole managing member of WLT Trading, "was conducting business in his individual capacity under the guise of a dissolved entity." *Id*. at ¶ 16. WLT Trading, "in turn, contracted with Starco to transport and/or store the Miners within the U.S. pending instructions from" NY Trading "on further shipments to Metafi's designated hosting sites." *Id*. at ¶ 18.

Plaintiff and Colony Pond entered into a Hosting Services Agreement pursuant to which Colony Pond agreed to provide "co-location and hosting services" for 1,900 Miners at a Colony

---

[1] These facts are drawn from the Verified Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

Pond facility. *Id.* ¶ 19. Pursuant to this agreement, Plaintiff paid Colony Pond $652,000 as a security deposit; Colony Pond could not move and re-install the Miners without Plaintiff's permission; and Colony Pond had to maintain property liability insurance for the premises where the Miners were operated and stored. *Id*. at ¶¶ 19-22.

Although Plaintiff paid NY Trading the total purchase price, NY Trading delivered only 4,365 of the 4,500 Miners to the United States, *id.* ¶ 24, and only 616 Miners "reportedly reached" Colony Pond, *id*. at ¶ 26. NY Trading represented to Plaintiff that it loaded 1,902 Miners onto two trucks for delivery to Colony Pond's hosting site in New York. *Id*. at ¶ 29. Colony Pond acknowledged the delivery of only 616 Miners from one of these trucks. *Id*. at ¶ 30. "Ultimately, Colony Pond reported" that it could not host any of the Miners because of a power outage. *Id.* ¶ 33. When Plaintiff "advised Colony Pond that it wished to terminate the agreement" and asked Colony Pond to pack up the Miners for "pick-up," Colony Pond "advised that the Miners had been moved (without prior notice to Metafi as required under the Hosting Agreement) and were not available for pick-up." *Id*. at ¶ 36.

### B.        The Arbitration Provisions

Both the Purchase Agreement and Shipping Agreement, which NY Trading submitted with its motion to dismiss, contain an arbitration provision. Section 11.1 of the Purchase Agreement provides in relevant part:

> Any dispute, controversy[,] or[] claim or difference of any kind whatsoever arising out of, relating to or in connection with this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof, the validity, scope and enforceability of this arbitration provision and any dispute regarding non-contractual obligations arising out of or relating to it (the "Dispute") shall be referred to and finally resolved by arbitration administered by the New York International Arbitration Center ("NYIAC") in accordance with the NYIAC Administered Arbitration Rules in force at the time of the commencement of the arbitration.

Dkt. No. 48-1 at 8-9. Section 11.4 of the Purchase Agreement provides that "[a]ny party to the Dispute shall be entitled to seek preliminary injunctive relief, if possible, from any court of competent jurisdiction pending the constitution of the tribunal." *Id.* at 9.

Section 5.4 of the Shipping Agreement provides:

> The agreement shall be governed by the law of Hong Kong Special Administrative Region of the People's Republic of China. In the course of the performance of this agreement, both parties shall first settle the differences or disputes through friendly negotiation. If the negotiation fails, either party may apply to the Hong Kong Arbitration Commission for arbitration in accordance with its arbitration rules. The arbitral award shall be final and binding upon both parties.

Dkt. No. 48-2 at 11.

### C.    Procedural History

On October 3, 2024, shortly after filing the Verified Complaint, Plaintiff moved for a temporary restraining order and preliminary injunction. Dkt. No. 11. The Court granted Plaintiff's request for a preliminary injunction on October 24, 2024 and preliminarily enjoined Defendants from the "assignment, transfer, sale, purchase, and/or any other form of disposition of any rights, title, or interest in the miners possessed by any of the Defendant(s) while the merits of the contractual dispute are resolved by this court or otherwise." Dkt. No. 25.

NY Trading did not timely appear in this action or answer the Verified Complaint. Plaintiff requested and received a Clerk's Entry of Default against NY Trading and subsequently moved for default judgment. Dkt. Nos. 28, 29, 36. In April 2025, NY Trading moved to vacate the Clerk's Entry of Default and sought leave to file a motion to dismiss. Dkt. No. 40. By Memorandum-Decision and Order dated September 30, 2025, the Court granted NY Trading's motion to vacate and granted leave to file this motion.

## II.    DISCUSSION

### A.    Standard Applicable to NY Trading's Motion to Dismiss

As an initial matter, the Court must determine the proper standard under which to evaluate NY Trading's motion, which invokes Federal Rule of Civil Procedure 12(b)(1), Rule 12(b)(6), and Section 4 of the FAA.

First, although invoking Section 4 of the FAA, NY Trading does not seek an order compelling arbitration under that statute or otherwise manifest any intention to arbitrate the dispute. *See* Dkt. No. 47 at 1-2 (notice of motion); Dkt. No. 47-2 at 10; *see* 9 U.S.C. § 4 (providing that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may seek a court order compelling arbitration). Under these circumstances, the Court will not convert the present motion to a motion to compel arbitration and instead will consider it strictly as a motion to dismiss the claims against NY Trading under the Federal Rules of Civil Procedure. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (holding that the district court did not err in not converting a motion to dismiss to a motion to compel arbitration where Amazon did not seek an order compelling arbitration and there was not a "clear indication of Amazon's intent to compel Nicosia to arbitrate").

Second, NY Trading cites no authority for the proposition that the existence of an arbitration clause deprives the Court of subject matter jurisdiction where a party moves to dismiss but not to compel arbitration under the FAA, and the Court has found none. Thus, as in *Nicosia*, the Court will evaluate NY Trading's motion as one for failure to state a claim under Rule 12(b)(6). *See Nicosia*, 834 F.3d at 229-30.

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" for purposes of a motion to dismiss. *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (citation omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "A 'necessary prerequisite' for taking into account material extraneous to the complaint 'is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough.'" *Nicosia*, 834 F.3d at 231 (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)). Furthermore, it must be clear that "no dispute exists regarding the authenticity or accuracy of the document." *Id.* (citation omitted).

Here, NY Trading submitted the Agreements with its motion to dismiss. These two documents are plainly integral to and incorporated by reference into the Verified Complaint, which asserts claims for breach of both Agreements. Moreover, Plaintiff raises no question as to the

documents' accuracy and authenticity, and the Court will consider them in resolving the motion to dismiss.

On a Rule 12(b)(6) motion, "when it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss in favor of arbitration without the delay of discovery." *Nicosia*, 834 F.3d at 231.

### B.    Applicability of the Arbitration Provisions

NY Trading argues that all of Plaintiff's claims against it are covered by and subject to the arbitration clauses found in the Purchase Agreement and Shipping Agreement. Dkt. No. 47-2 at 11-14. Plaintiff responds that it is not subject to mandatory arbitration of its independent statutory and tort claims. Dkt. No. 49 at 14, 15.

It is well-settled that "arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The FAA "places arbitration agreements on equal footing with other contracts" and "requires courts to enforce them according to their terms." *Id.* at 67-68 (citations omitted). However, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Nicosia*, 834 F.3d at 229. The question of whether the parties have agreed to arbitrate is an "issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* (citations omitted). "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Sudakow v. CleanChoice Energy, Inc.*, 153 F.4th 280, 285 (2d Cir. 2025) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).[2]

NY Trading provides no real analysis of why each of Plaintiff's claims is subject to the arbitration provisions or, perhaps more importantly, to *which* arbitration provision each claim is

---

[2] Here, the Purchase Agreement provides that it is governed by New York law, and the Shipping Agreement provides that it is governed by the law of Hong Kong. Dkt. No. 48-1 at 8; Dkt. No. 48-2 at 11.

subject. As Plaintiff points out, the arbitration provisions in the two Agreements differ in material respects, including in governing law, arbitral forum, and the requirement (or not) of pursuing "friendly negotiation" prior to arbitration. *See* Dkt. No. 48-1 at 8-9; Dkt. No. 48-2 at 11. Crucially, the Purchase Agreement's arbitration provision contains a clause delegating questions of the "validity, scope and enforceability" of the provision to the arbitrator, while the Shipping Agreement's arbitration provision does not. *Compare* Dkt. No. 48-1 at 8-9, *with* Dkt. No. 48-2 at 11. NY Trading repeatedly relies on the Purchase Agreement's arbitration provision and implies that the Shipping Agreement's clause contains identical language, without addressing the actual substance of the Shipping Agreement's provision or contending with the question of which provision might apply to which claims.[3]

Which Agreement's arbitration provision governs which claims matters on this motion because one provision delegates questions of arbitrability to the arbitrator and the other does not. Plaintiff argues that not all of its claims are within the scope of the arbitration provisions, including its "independent statutory and tort claims" which "arise from conduct outside the contractual performance of either" Agreement. Dkt. No. 49 at 14, 15. If Plaintiff's claims are subject to the Purchase Agreement, under which disputes regarding the "validity, scope and enforceability" of the arbitration provision" are themselves subject to arbitration, Dkt. No. 48-1 at 8-9, the parties' dispute over the arbitrability of Plaintiff's claims would be for the arbitrator. However, if Plaintiff's claims are subject to the Shipping Agreement, which does not contain a delegation clause, that arbitrability dispute is for the Court to decide. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68, 72 (2019) (noting that parties may agree to have an arbitrator

---

[3] NY Trading also repeatedly asserts that the two arbitration provisions cover "any and all" claims or disputes between the parties. *See, e.g.*, Dkt. No. 47-2 at 5, 6, 11, 12; Dkt. No. 52 at 6, 8. The phrase "any and all" does not appear in either provision.

decide "gateway" questions of arbitrability, but that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so" (citation omitted)).

Moreover, where there is more than one contract containing conflicting arbitration clauses which might apply to a dispute, the issue of *which* contract controls is itself for the Court, not an arbitrator. In *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), the parties executed two contracts relevant to the dispute between them. The first contract contained an arbitration provision with a delegation provision providing that an arbitrator must decide all disputes under the contract, "including whether a given disagreement is arbitrable." *Id.* at 145. The second contract contained a forum selection clause providing that disputes related to the contract must be decided in California courts. *Id.* The Supreme Court held that, "before either the delegation provision or the forum selection clause c[ould] be enforced," a court—not an arbitrator—had to "decide what the parties have agreed to—*i.e.*, which contract controls." *Id.* This is because arbitration is "strictly a matter of consent" and arbitration agreements are "simply contracts," so the "first question in any arbitration dispute must be" what the parties have agreed to. *Id.* at 148.

Although *Coinbase* involved an arbitration provision which conflicted with a forum selection provision, the reasoning underlying the Supreme Court's decision applies equally to the present situation involving two contracts with conflicting arbitration provisions. Here, as in *Coinbase*, the "question whether the[] parties agreed to arbitrate arbitrability can be answered only by determining which contract applies." *Id.* at 150.

NY Trading has not endeavored to explain which arbitration provision governs which of Plaintiff's claims. Nor, assuming the Shipping Agreement governs the dispute, has NY Trading offered any analysis of how any or all of Plaintiff's claims fall within the scope of the Shipping

9

Agreement's more general language referring to "the differences or disputes" "[i]n the course of the performance of this agreement." Dkt. No. 48-2 at 11. The Court declines to undertake a claim-by-claim analysis on either issue in the first instance. The Court therefore concludes that NY Trading has not met its burden of establishing, as a matter of law, that Plaintiff's claims are subject to mandatory arbitration or its entitlement to relief on this motion. *Cf. Nicosia*, 834 F.3d at 238 (holding that defendant failed to show on Rule 12(b)(6) motion that plaintiff "agreed to mandatory arbitration as a matter of law").

## III.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that NY Trading, Inc.'s motion to dismiss, Dkt. No. 47, is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 21, 2026

Elizabeth C. Coombe
U.S. District Judge